STATE vs. EDWARD PRIMROSE.

1.  HOMICIDE—DEFINED.
    "Homicide" is the killing of one human being by another.

2.  HOMICIDE—"FELONIOUS HOMICIDE"—CLASSES.
    "Felonious homicide" is divided into three classes:   Murder of the first degree, murder of the second degree, and manslaughter.

3.  HOMICIDE—PRESUMPTION OF MALICE—BURDEN OF PROOF.

Wherever a homicide was deliberate or without cause, the law presumes malice on the part of the prisoner, and the burden is upon him to prove the contrary.

4.  HOMICIDE—"MURDER OF THE FIRST DEGREE"—DEFINED.

"Murder of the first degree" is where the killing was done with malice aforethought.

5.  HOMICIDE—"MALICE AFORETHOUGHT"—DEFINED.

"Malice aforethought," as it exists in murder, is a deliberate and formed design to kill, which may be manifested by a lying in wait, antecedent threats, former grudge, ill-will, spite, hatred, or any circumstances that show the accused's intent toward his victim at the time of the killing.

6.  HOMICIDE—"MURDER OF THE SECOND DEGREE"—DEFINED.

"Murder of the second degree" is when the killing is done with implied malice, not with a deliberate or formed design, but without justification or excuse, and without provocation, or sufficient provocation to reduce the offense to manslaughter.

7.  HOMICIDE—MURDER OF THE SECOND DEGREE—IMPLIED MALICE.

Where a killing is committed under the influence of a depraved heart, or with cruel indifference to human life, the law implies malice, and makes the offense murder of the second degree; the killing neither being deliberate nor in the heat of passion.

8.  HOMICIDE—DEADLY WEAPON—PRESUMPTION OF MALICE.

Where a killing is done with a deadly weapon, malice is presumed; the accused being presumed to have intended the usual and probable consequences of his acts, and the burden therefore being on him to prove the contrary.

9.  HOMICIDE—"MANSLAUGHTER"—DEFINED.

"Manslaughter" is a killing in a sudden affray, without malice, but in the heat of such passion, produced under provocation, as to render the person deaf to reason.

10.  HOMICIDE—PLEA OF SELF-DEFENSE—BURDEN OF PROOF.

The burden of establishing self-defense in a prosecution for homicide *held* to be upon the accused.

11.  HOMICIDE—PREREQUISITES TO PLEA OF SELF-DEFENSE.

In order that one may avail himself of the plea of self-defense, although he could have reasonably believed that he was in danger of death from deceased's attacks, yet he must have retreated, if he could safely have done so, or used such other means as were in his power to avoid killing deceased.

12.  HOMICIDE—SELF-DEFENSE—HOW DETERMINED.

To ascertain whether the accused properly exercised his right of self-defense, the jury should consider all the facts of the case as disclosed by the witnesses.

13.  CRIMINAL LAW—JURY—CONSIDERATION OF TESTIMONY.

It is the jury's duty to reconcile conflicting testimony, if possible, but, if not, to accept such testimony as they deem worthy of belief, considering the intelligence of the witnesses, their bias, and their opportunity for knowing whereof they testified.

14.  CRIMINAL LAW—CIRCUMSTANTIAL EVIDENCE—NATURE OF.

To convict one on circumstantial evidence, the circumstances must be proved beyond a reasonable doubt, must be consistent, in all respects with the theory of the accused's guilt, and must be inconsistent with any other reasonable theory than such guilt.

15.  CRIMINAL LAW—BURDEN OF PROOF ON THE STATE.

The duty is on the state to prove beyond a reasonable doubt every material ingredient of the crime charged.

16.  CRIMINAL LAW—PRESUMPTION OF INNOCENCE.

The accused is presumed to be innocent until his guilt is proved beyond a reasonable doubt.

17.  CRIMINAL LAW—"REASONABLE DOUBT"—DEFINED.

The "reasonable doubt" beyond which one accused of crime must be proved guilty is not a mere fanciful, vague, or speculative doubt, but such a substantial doubt as fair-minded men would entertain under all the facts in the case.

18.  CRIMINAL LAW—PROOF NECESSARY TO CONVICT.

Where in a prosecution for homicide, if the jury could not tell from the evidence who fired the shot, or that beyond a reasonable doubt the accused fired it, he should be acquitted.

19.  HOMICIDE—MURDER.

Where, in an affray, deceased was accidentally shot while accused was attempting to disarm him, or to prevent deceased from injuring him, murder was not committed.

20.  HOMICIDE—SELF-DEFENSE.

Where deceased attacked accused in such a manner that he had reasonable cause to believe, and did believe, that he was in imminent danger of death or great bodily harm, which he could not prevent save by shooting deceased, his doing so was a justifiable act of self-defense.

21.  HOMICIDE—JURY—JUDGES OF FACT—CONSIDERATION OF THE SIZE OF THE PARTIES.

The jury being the sole judges of the facts in a prosecution for homicide, may take into consideration the contrast in size between accused and deceased.

*(October  6,  1910.)*

PENNEWILL, C. J., and BOYCE and CONRAD, J. J., sitting.

*Andrew C. Gray*, Attorney General, and *Josiah O. Wolcott*, Deputy Attorney General, for the state.

*Franklin Brockson* for the prisoner.

At a Court of Oyer and Terminer in and for New Castle County, on October fifth, 1910, the prisoner was placed upon trial upon an indictment charging him with murder of the first degree, being No. 90, September Term, 1910; it being alleged that on Sunday, the seventh day of August, 1910, he did kill one

August Frisby in Appoquinimink Hundred, New Castle County, by shooting him with a pistol in the head, inflicting a mortal wound from which the said Frisby soon thereafter died.

It was shown at the trial that there was a rivalry between the deceased and the defendant regarding a certain colored woman named Clara Thomas, with whom the deceased at the time he received the wound which caused his death, was driving in a york carriage or top buggy, along the public road to a certain campmeeting. There was evidence that the defendant knew that Clara Thomas was with Frisby and that he (Primrose) had said on the day of the shooting to one witness "I will get him," and to another witness "I will match him."—referring to Frisby, the deceased; that Primrose had asked the woman Thomas to accompany him to the campmeeting on the day in question but that she refused, telling him that she had promised to go with Frisby. That Frisby and Primrose had met at the house of one witness on the same day before Frisby had started to the campmeeting and that their conduct towards each other was cool, neither of them speaking to the other. That when Frisby started in his team with the Thomas woman toward the campmeeting, the defendant (Primrose) was seen shortly after they left driving his team in their direction and finally overtook them on the public road in front of the house where Frisby's mother lived. From this point the woman, Clara Thomas, who was an eye witness to the affray, testified to the effect that Primrose upon overtaking Frisby, who had stopped his carriage in front of his mother's house, intending to go in the house, then got out of his wagon and started toward the vehicle where the witness and Frisby were, asking the witness if he could come over and talk to her while Frisby went in the house; that Frisby said to Primrose "Man, you go on. You are nothing but a mouthful of gas anyhow," that Primrose who was then nearly to Frisby's carriage, going on the side where the witness sat, laughed and said "I guess I'm about as much as you are." That when Primrose got as far as the wheel of Frisby's carriage, the latter picked up a revolver which was lying on his carriage seat between the witness and himself, and fired across her at Primrose, pointing the pistol

Facts.

straight at the latter.   That Primrose grabbed for Frisby's hand, at the same time climbing up on the wheel into the wagon.   That Frisby then again shot at Primrose and struck the latter's hand, the powder from the pistol burning the dress of the witness. That while Primrose was still trying to wrench the revolver out of Frisby's upraised hand, in the struggle the revolver was again discharged, that Frisby's head was bent downward in the struggle and that when the revolver was discharged the last time, Primrose ran to his own team and left Frisby (who had been wounded in the head) standing on the carriage wheel.   That Primrose turned his horse around and told the witness to get in the carriage with him; that she told him that she was shot, as she saw her dress smoking, that Primrose then said "Come on, and I will take you to the doctor," that they did go to see a doctor and Primrose complained to the doctor of being shot in the leg.   Upon examining the leg, the doctor, according to his testimony, found an abrasion which he decided was not made by a bullet.   The witness Clara Thomas told the doctor that she was not shot. The same witness testified that while she and Primrose were driving along the road on the way to the physician's office, Primrose said to her "If you had gone with me as I asked you to go to the camp, it might not have happened."

After laying the proper ground for contradiction, on the ground of surprise, the state proved by other witnesses that Clara Thomas had said to the Attorney General, under oath, in his office, a short time before the trial, that Primrose had caught Frisby's head with his left hand, pulled it down and shot him in the back of the head; at the same time telling the Attorney General that she had promised the defendant, Primrose, that at the trial she would testify for him.

The defendant Primrose testified that Frisby was shot accidently while he was trying to prevent Frisby from shooting him.

Frisby soon after the shooting, was found near the scene thereof, unconscious, and taken to his mother's house.   He remained unconscious until he died at the Delaware Hospital in Wilmington a few days thereafter.

A *post-mortem* examination showed that death was produced by a bullet wound; that the bullet had entered the deceased's head just above the left ear, taking an almost horizontal course slightly downward and coming out on the opposite side of the skull, penetrating the brain.

CONRAD, J., charging the jury:

Gentlemen of the jury:—Edward Primrose, the prisoner at the bar, is charged in this indictment with murder of the first degree; it being alleged that he did on the seventh day of August, A. D. 1910, kill one August Frisby in Appoquinimink Hundred in this county, by shooting him with a pistol inflicting thereby a mortal wound from which the said Frisby died. It is contended by the defendant that he was shot at by the said Frisby, and that he, the said Primrose, in striving to prevent the said Frisby from shooting a third time, took hold of both of the hands of the said Frisby, and that while so holding the said Frisby, the pistol was discharged, the ball taking effect in the head of the said Frisby and killing him.

Homicide is the killing of one human being by another. Felonious homicide is divided into three classes; murder of the first degree; murder of the second degree and manslaughter. Malice is an essential ingredient of the crime of murder of both degrees. Without malice there can be no murder either of the first or of the second degree. Malice is a condition of the heart. Wherever the fatal act is done deliberately or without adequate cause, the law presumes that it is done with malice and the burden is on the prisoner to show from the evidence or by inference from the circumstances of the case, that the act was not done with malice.

Murder of the first degree is where the killing was done with express malice aforethought. Express malice aforethought is where one person kills another with a sedate, deliberate mind and formed design, which formed design may be manifested in many ways; as, for instance, by lying in wait for the deceased, or by antecedent menances or threats that disclose a purpose on the part of the prisoner to commit the act charged, or by a former

grudge, ill-will, spite, hatred, or malevolence towards the deceased, or any other circumstances which disclose the purpose or intention of the accused towards his victim at the time when the crime was committed.

Murder of the second degree is where the killing is done with implied malice. Implied malice is an inference or conclusion of the law from the facts found by the jury. Murder of the second degree is where there was no deliberate mind or formed design to take life, or to perpetrate a crime punishable with death, but where the killing nevertheless was done without justification or excuse, and without provocation, or without sufficient provocation to reduce the offense to manslaughter. And where the circumstances surrounding the case show that the killing was committed under the influence of a wicked or depraved heart, or with cruel and wicked indifference to human life, the law implies malice and makes the offense murder of the second degree.

When the killing is shown to have been done with a deadly weapon, malice is presumed, in the absence of evidence to the contrary, and the burden of showing the contrary is on the accused, for the usual and probable consequences of the act are presumed in law to have been intended by the person using the deadly weapon.

Manslaughter is usually committed where one in a sudden affray, in the heat of blood, or in a transport of passion, without malice, inflicts a mortal wound, without time for reflection or for the passions to cool. It is where one person unlawfully kills another without malice. In order to reduce the crime to manslaughter the provocation must be very great, so great as to produce such a transport of passion as to render the person for the time being deaf to the voice of reason. While murder proceeds from a wicked and depraved heart and is characterized by malice, manslaughter results not from malice, but from unpremeditated and unreflecting passion.

The burden of establishing self-defense rests upon the accused. If the deceased first attacked the accused, even though the attack was of such a character as to create in the mind of the accused, a reasonable belief that he was in danger of death or

great bodily harm, it was his duty to retreat, if he could safely do so, or to use such other reasonable means as were within his power to avoid killing his assailant. No one may take the life of another, even in self-defense, unless there is no other available means of escape from death or great bodily harm. In ascertaining whether the accused was in danger of injury at the hands of the deceased when he struck the mortal blow; and if in such danger, whether he took the proper precautions to avoid such danger, the jury should consider the facts and circumstances of the case as disclosed by the witnesses.

Where there is conflict in the testimony, it is the duty of the jury to reconcile such conflict if they can. If they cannot, they should accept such testimony as they consider under all the circumstances is most worthy of credit and belief, having of course regard to the ignorance or intelligence of the witnesses, their interest or bias, and the opportunity which they had of observing and knowing the things respecting which they testified.

As regards circumstantial evidence, the law has been laid down in this state as follows:

"Where the evidence relied upon to prove the guilt of the accused is circumstantial, it is essential first, that such circumstances be proved to the satisfaction of the jury beyond a reasonable doubt; second, that such circumstances be in all respects consistent with the theory of the guilt of the accused, and third, that such circumstances be inconsistent with any other reasonable theory than the guilt of the accused . In other words, there should not be a conviction upon circumstantial evidence unless such evidence be sufficient to exclude any reasonable inference or conclusion other than that the accused is guilty of the crime charged."

The duty is upon the state to prove beyond a reasonable doubt every material ingredient of the crime charged. In every criminal case the accused is presumed to be innocent until his guilt is proven beyond a reasonable doubt. If after carefully and conscientiously considering and weighing all the evidence in the case, you should entertain a reasonable doubt of the guilt of the prisoner, you should give him the benefit of such doubt, and your verdict should be not guilty. But such a doubt must be as the

word implies "reasonable," not a mere fanciful, vague or speculative doubt, but such a substantial doubt as fair-minded and conscientious men would entertain under all the facts and circumstances in the case. If upon mature consideration of the evidence, you should not be able to determine how the fatal shot was fired, or by whom it was fired, or if you should not be satisfied from the evidence, beyond a reasonable doubt, that the shot was fired by the prisoner, you should acquit him. If you should find from the evidence that the prisoner without intending to injure him, attempted to disarm Frisby, or attempted to prevent Frisby from injuring him, and in the struggle the pistol was accidentally discharged and killed Frisby, you should acquit the prisoner. And if the jury are satisfied from the evidence that the deceased first attacked the prisoner, and that from the character of such attack, he had reasonable cause to believe, and did believe, that he was in imminent danger of death or great bodily harm, and that he had no reasonable means of avoiding or preventing his death or great bodily harm, other than by shooting his assailant, and that under such circumstances he shot Frisby, it was a justifiable act of self-defense and the prisoner should be acquitted.

The jury are the sole judges of the facts and circumstances of the case as disclosed by witnesses, and they may consider in connection therewith any evidence going to show the contrast in size and physical proportions between the accused and the deceased.

If you are satisfied that the prisoner killed the deceased unlawfully, but without malice, your verdict should be guilty of manslaughter. If you believe the prisoner killed the deceased maliciously, without justification or excuse, and without sufficient provocation to reduce the offense to manslaughter, your verdict should be guilty of murder of the second degree.

If the evidence satisfies you that the prisoner killed the deceased with express malice aforethought, being as heretofore explained to you, with a sedate deliberate mind and formed purpose, then your verdict should be guilty of murder of the first degree.

And finally, if you are not satisfied beyond a reasonable doubt of the guilt of the prisoner of either murder of the first

Charge—Verdict.

degree, murder of the second degree or manslaughter, your verdict should be not guilty.

Verdict, not guilty.